ANNA S. HILL, Respondent, *v.* SAMUEL WINE and Others, Appellants, Impleaded with THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK.

*Mortgage foreclosure — not maintainable after the title passes under condemnation of the mortgaged premises.*

A mortgagee of premises in the city of New York, the title to which has been acquired by the city in condemnation proceedings before any default has taken place in the conditions of the mortgage, loses his lien upon the specific property and acquires in place thereof the right, as a person interested in the property, to have the value of his interest in the property ascertained and paid to him by the municipality.

*Semble,* that the right of action on the bond to which the mortgage is collateral is not affected by the condemnation proceedings.

APPEAL by the defendants, Samuel Wine and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 12th day of April, 1898, upon the decision of the court rendered after a trial at the New York Special Term.

*Abner C. Thomas,* for Samuel Weil, appellant.

*Alfred D. Lind,* for Samuel Wine and others, appellants.

*F. R. Minrath,* for the respondent.

INGRAHAM, J. :

This action was, in form, for the forelosure of a mortgage upon real property. The complaint alleges the execution of a mortgage

upon the property described in the complaint, as security for the payment of an indebtedness of $18,000, evidenced by a certain bond of the mortgagor, said bond containing a clause that, upon default of payment of interest within thirty days after the same became due, the principal sum and interest should become at once due and payable; that the defendants have failed to comply with the terms and conditions of the said bond and mortgage by omitting to pay the interest which became due on October 1, 1897; that the plaintiff elects that the entire sum secured by the said bond and mortgage should become forthwith due and payable; that the defendant, the mayor, aldermen and commonalty of the city of New York, has acquired the title to the said mortgaged premises, and that proceedings were pending for the determination of the value of the said premises and of the interests of the various persons therein, and the complaint demands judgment that the defendants may be barred of any right, claim, lien or equity of redemption in said premises; that the said premises may be decreed to be sold according to law, subject to the rights of the defendant, the mayor, aldermen and commonalty of the city of New York; that the moneys arising from the sale thereof may be paid into court; that the mayor, aldermen and commonalty of the city of New York be directed to pay to the purchaser or purchasers of the said premises any amounts that may be awarded for such property in said proceedings of condemnation; that the mortgagors be adjudged to pay any deficiency that may arise upon such sale, and that the plaintiff may have such other and further relief in the premises as to the court may seem just and equitable.

The defendants, other than the mayor, etc., of the city of New York, answered, setting up the proceedings taken by the city of New York to acquire title to the mortgaged premises for a public park, and the act under which it was alleged that the title to the premises vested in the mayor, aldermen and commonalty of the city of New York prior to the commencement of the action, and that in pursuance of that act the city of New York had taken actual possession of the premises and had become seized of all right, title and interest in and to the said premises. By a stipulation upon which the action was submitted to the trial court

the parties agreed that proceedings were commenced by the city of New York to acquire the fee of the premises for a park; that on February 5, 1897, commissioners were duly appointed "to make a just and equitable estimate of the loss and damage to the respective owners, lessees, parties and persons respectively entitled to or interested in said lands, tenements and hereditaments;" that such commissioners duly qualified and the proceeding was still pending before them, no report and no award having been made to any of the defendants; that while such proceedings were pending an act was passed by which the title to this property in question vested in the said mayor, aldermen and commonalty of the city of New York thirty days after the passage of the act; that by the terms of this act the title to the said lands embraced within the said park, including the premises in the complaint described, became vested in the mayor, aldermen and commonalty of the city of New York on the 22d day of June, 1897, and that thereupon and before the commencement of this action the said mayor, aldermen and commonalty of the city of New York took possession of the mortgaged premises and caused the buildings thereon to be torn down and demolished.

It thus appears that, prior to the default in the payment of interest by which the principal sum secured by the mortgage became due, in proceedings to acquire this land for a public park, the title to the property had vested absolutely in the city of New York and the city had taken possession of the premises, thereby removing the mortgagor from such possession. The mortgaged premises had thus ceased to belong to the mortgagor, and the interest of the mortgagees, as well as of the mortgagor, had been acquired by the city of New York. What was left to the mortgagor and the mortgagees was the obligation of the city of New York to pay the value of their respective interests in the property.

By section 970 of the Consolidation Act (Chap. 410, Laws of 1882), in force at the time of the commencement of this action, it was provided that the commissioners of estimate and assessment should make a just and equitable estimate of the loss and damage, if any, over and above the benefit and advantage to the respective owners, lessees, parties and persons respectively entitled unto and interested in the lands, tenements, hereditaments and premises so required for

the purpose by and in consequence of opening such public square or place, street, avenue, or part or section of a street or avenue to be so opened; and this provision is continued in force by section 980 of the charter of the city of New York. (Laws of 1897, chap. 378.) Thus, upon the title of this land vesting in the city of New York, free from any incumbrance by way of mortgage or other lien, the plaintiff's interest in the property, as well as the mortgagor's title to the fee, was acquired by the city of New York and vested absolutely in the city. In place of the plaintiff's lien by mortgage upon this specific real estate, the plaintiff acquired a right to have the value of her interest in the property paid by the city of New York. The statute does not give to the owner of the equity of redemption a claim against the city for the full value of the land, leaving the mortgagee to proceed against the owner of the equity to foreclose his lien upon the right of action against the city for the whole value of the land, but gives to the mortgagee, as a party interested in the lands taken by the city for the purpose mentioned, a right to have his interest in the lands assessed by the commissioners and paid by the city directly to the plaintiff. The interest of both the mortgagor and the mortgagee in the mortgaged premises were acquired by the city for public use, and in place of that interest in the land, the plaintiff had the right to require the city of New York to pay the value of her interest directly to her. The plaintiff's right of action against the obligor upon the bond was not affected, and if the award by the city was not sufficient to pay the mortgage, the mortgagees would have a cause of action against the plaintiff upon the bond, but the lien upon the mortgaged premises having vested in the city, there was no lien or mortgage that the plaintiff could foreclose.

The Legislature would have had no power to take away this plaintiff's interest in the land without providing a sure and safe method by which the value of her interest in such mortgaged premises could be ascertained and paid to her. That, the statute in terms does. There is no provision of the statute which substitutes a fund to which the lien of the mortgage should attach, and which lien a mortgagee could foreclose, but a right is given to the mortgagee as a person interested in the property taken for public use to have his interest in the property ascertained and paid to him by the munic-

ipal corporation, and that right inures to the benefit of the plaintiff and is the substitute for the plaintiff's interest in the property which has been acquired by the city.

This position seems to us so clear that it is hardly necessary to cite authorities to sustain it. It receives ample support, however, in the case of *Matter of City of Rochester* (136 N. Y. 89) where a purchaser at a foreclosure sale claimed a fund in court which had been fixed as the value of a portion of a piece of property which had been mortgaged to the claimant, and which had been taken by the city of Rochester in condemnation proceedings. The court in determining this question said : " The appellant further contends that title to this fund passed to the respective purchasers upon the foreclosure sales under the two prior mortgages, upon the ground that the fund stood in the place of the land. It was to be so regarded for the purpose of measuring and settling the rights of the parties interested,   *   *   * but the paramount right of the city withdrew from the lien of the mortgages the water right, condemned and transferred it to the city free and discharged from the mortgage liens. That occurred before either sale. The balance of the land only could be sold and conveyed on the foreclosure ; the referee's deed could convey and did convey only that balance ; and the right of the mortgagees became merely an equitable lien upon the fund in the hands of the court to the extent of any deficiency which the land sold did not pay. *   *   * Treating it as land to ascertain and fix rights could not alter the real and existing fact, that it was proceeds of land already sold, and merely awaited distribution according to the antecedent rights and liens of those interested. Neither foreclosure gave title to the fund, or altered the duty of proper distribution by the court. That fund was the product of a paramount proceeding which cut off every right in the water both of owners and incumbrancers, so that there could be neither sale nor foreclosure as to that, and instead there remained an equitable lien upon the proceeds to be worked out by the court empowered to distribute." The same principle was reasserted in the case of *Gates* v. *De La Mare* (142 N. Y. 312), where the court, in speaking of such a condemnation proceeding, say : " If the proceedings were prosecuted to a final consummation, the city would acquire title to a part of the mortgaged premises required for the street. All pre-existing titles and interests would

thereupon become extinguished, and the award of the commissioners would stand as a substitute for the land taken. Where the lands taken are mortgaged, the mortgagee would be entitled to have the award applied upon his mortgage to the extent necessary for his protection, and the remainder would be payable to the owner of the land. The court upon application would adjust the rights of the several claimants of the award according to their legal and equitable interests." In the case last cited, the right to foreclose the mortgage and the title of the purchaser under the referee's deed was confirmed, because at the time of the sale, the report of the commissioners not having been confirmed, the title of the owner was not divested, but still remained in the owner of the land. Under such circumstances it was held that the referee's deed when executed operated to carry the award which was represented as a part of the land purchased. (See, also, *Home Insurance Company* v. *Smith*, 28 Hun, 301.)

The case of *Youngs* v. *Stoddard* (27 App. Div. 162) and other cases of that character where a mortgagee seeks to have applied to the payment of a mortgage an award made for the mortgaged premises in condemnation proceedings are not at all opposed to this view. There the award was in form made for the whole value of the premises, the mortgagee not having appeared and demanded from the commissioners a separate award to him for his interest in the premises. In such a case it is clear that the award stands in place of the mortgaged property taken by the condemnation proceedings, and a court of equity has power to distribute that award according to the interests of the respective parties in the lands condemned and taken, but there is nothing in the principle there stated that would justify an action to foreclose the mortgage and by a public sale of either the land which had become vested in the city for public purposes or the award which was to be made by the city for such lands to vest the title to the whole award in the mortgagee. The lien that the mortgagee had was an equitable lien which would entitle him to be paid the amount of his mortgage out of the award, and which a court of equity would enforce by distributing the fund to those entitled to it, not a mortgage upon the award which could be foreclosed and sold.

The case of *Magee* v. *City of Brooklyn* (144 N. Y. 268) presented

an entirely different question, the court there saying: "The case has always been considered as *sui generis*, and the rights of the parties determined according to the peculiar facts and circumstances upon equitable principles." That action was brought against the city of Brooklyn to recover an award made by the city for lands taken in condemnation proceedings, and it was held that the grantee of the land, the grant having been made after the title had vested in the city, was entitled to the award, the court saying: "Having conveyed the land with full covenants it must be assumed that they intended to transfer the thing which represented it, which was the money awarded as its value." And in regard to the right of a purchaser under a judgment in a foreclosure suit it was held that the award was properly made to the purchaser, the court saying: "Though the plaintiff had only a lien upon the land when it was constructively taken, yet when it was actually taken he had the title which by operation of law related back to the time when the mortgage was given, and hence the city had taken his land and he is entitled to the money which represents it. Moreover, even if the mortgage had not been foreclosed and title, taken under it, such a conveyance is deemed to operate in equity as an assignment of the award when made for the protection of the mortgagee or his assigns." Nothing in this case would justify the foreclosure of the mortgage by an action commenced after the land had actually vested in the city and the city had taken actual possession of the property.

We think, therefore, that no action for a foreclosure of this mortgage could be maintained by the plaintiff, and as this objection goes to the right of the plaintiff to maintain the action, there can be no advantage to the plaintiff in ordering a new trial.

The judgment appealed from should be reversed and the complaint dismissed, with costs.

VAN BRUNT, P. J., PATTERSON, O'BRIEN and MCLAUGHLIN, JJ., concurred.

Judgment reversed and complaint dismissed, with costs.